FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 19, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ABRAHAM E.,[1]<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[2]<br><br>Defendant. | No. 2:19-cv-00184-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 15, 19 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned

identifies them by only their first names and the initial of their last names. *See*

LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.

Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R.

Civ. P. 25(d).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 19. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 15, and grants Defendant's motion, ECF No. 19.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER - 4

a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 29, 2016 and April 4, 2016, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of September 5, 2015.  Tr. 79, 94, 219-28.  The applications were denied initially and on reconsideration.  Tr. 139-47, 149-62.

Plaintiff appeared before an administrative law judge (ALJ) on November 16, 2017. Tr. 33-78. On June 13, 2018, the ALJ denied Plaintiff's claim. Tr. 13-32.

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 5, 2015. Tr. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: seizure disorder, unspecified neurocognitive disorder, anxiety disorder (post-traumatic stress disorder and panic disorder), bipolar disorder, and intermittent explosive disorder/personality disorder. Tr. 19.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 19. The ALJ then concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> [Plaintiff] is not able to climb ladders, ropes or stairs and he must avoid hazards such as unprotected heights, moving machinery, open bodies of water, etc.; he is able to understand, remember and carry out simple as well as routine tasks but he should not work with the general public; he is able to perform work with occasional brief contact with co-workers but he should work independently, not on a team or tandem tasks; he is able to adjust to expected and occasional changes in the workplace.

Tr. 21.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 27. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as hospital cleaner, hand packager, and laundry laborer. Tr. 27-28. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of September 5, 2015, though the date of the decision. Tr. 28.

On April 5, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 15 at 2.[3]

_____

[3] In the statement of issues, Plaintiff lists challenges to the ALJ's evaluation of the medical opinion evidence and analyses at steps four and five. ECF No. 15 at 2. Immediately following the statement of issues, Plaintiff instead lists challenges to the ALJ's evaluation of the medical opinion evidence and Plaintiff's symptom claims, as well as the ALJ's analysis at step two. ECF No. 15 at 2. The only issues challenged by Plaintiff in the body of the brief are the ALJ's evaluation of the medical opinion evidence and Plaintiff's symptom claims, and the analysis at step five. ECF No. 15 at 7-16. The Court will only address the ALJ's findings that were substantively challenged in Plaintiff's opening brief, and finds that the other challenges are waived. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

ORDER - 9

# DISCUSSION

## A.    Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Rebekah Cline, Psy.D., and Patrick Metoyer, Ph.D. ECF No. 15 at 11-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th 1996)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Cline

On March 3, 2016, Rebekah Cline, Psy.D., performed a psychiatric evaluation and diagnosed Plaintiff with unspecified personality disorder with strong traits of borderline personality disorder and a few traits of antisocial personality disorder, unspecified mood disorder, and alcohol use disorder, mild to moderate, in early full remission. Tr. 312-16. Upon mental status examination, Dr. Cline noted that Plaintiff was casually dressed and groomed, slightly loud, rambling, and difficult to keep on topic, was guarded but otherwise cooperative with fair eye contact, and had a slightly flattened affect. Tr. 316. Dr. Cline found that Plaintiff's thought process and content, perception, abstract thought, and insight and judgment were not within normal limits, while his orientation, memory, fund of knowledge, and concentration were within normal limits. Tr. 316. Dr.

Cline opined that Plaintiff had marked limitations in the ability to communicate and perform effectively in a work setting and maintain appropriate behavior in a work setting. Tr. 315. She also opined that Plaintiff had moderate limitations in understanding, remembering, and persisting in tasks by following detailed instructions, learning new tasks, adapting to changes in a routine work setting, making simple work-related decisions, being aware of normal hazards and taking appropriate precautions, asking simple questions or requesting assistance, and completing a normal work day and work week without interruptions from psychologically based symptoms. Tr. 314-15. Dr. Cline assessed mild limitations in understanding, remembering, and persisting in tasks by following very short and simple instructions, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances without special supervision, performing routine tasks without special supervision, setting realistic goals, and planning independently. Tr. 314-15. Dr. Cline opined that Plaintiff's limitations would last for six to 12 months. Tr. 315.

The ALJ gave Dr. Cline's opinion partial weight. Tr. 24-25. Because Dr. Cline's opinion was contradicted by the nonexamining opinions of Dr. Eather, Tr. 80-93, 95-108, and Dr. van Dam, Tr. 110-23, 125-38, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Cline's opinion. *Bayliss*, 427 F.3d at 1216.

ORDER - 12

### a. Does Not Satisfy Disability Durational Requirement

The ALJ discounted Dr. Cline's assessment because she opined that Plaintiff's impairments would cause limitations for a six to 12-month period. Tr. 24, 315. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. §§ 404.1505(a), 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning"). In the opening brief, Plaintiff did not challenge this reason articulated by the ALJ, thus it is waived. *Kim*, 154 F.3d at 1000.

Despite Plaintiff's waiver, the Court has reviewed the ALJ's finding. The ALJ noted that Dr. Cline's opinion only assessed marked restrictions for a period of six to 12 months. Tr. 24. To be disabled, an impairment must be expected to last for a continuous period of at least twelve months. *See* 20 C.F.R. §§ 404.1509, 416.909; *see also* 20 C.F.R. §§ 404.1505, 416.905. Here, Dr. Cline opined that Plaintiff would be impaired with available treatment for up to 12 months. Tr. 315. Therefore, Dr. Cline's opinion satisfied the disability durational requirement and this was not a specific and legitimate reason to discredit Dr. Cline's opinion. However, such error is harmless because the ALJ provided another specific and

legitimate reason, supported by substantial evidence, *see infra*, to discredit Dr. Cline's opinion. *Molina,* 674 F.3d at 1115.

### b. Inconsistent with Overall Record

The ALJ reasoned that Dr. Cline's opinion was not consistent with the overall record. Tr. 24-25. Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1052 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ noted that Plaintiff was started on medication after Dr. Cline's assessment, and although there were several instances of Plaintiff having difficulty interacting with others, the overall record showed he was able to interact with others in a limited capacity. Tr. 24-25; *see, e.g.,* Tr. 338 (May 12, 2016: two months after Dr. Cline's assessment, Plaintiff reported that his current medication regimen had been very effective in helping him better cope with his psychiatric symptoms; his auditory and visual hallucinations, delusional thinking, and paranoia were all "significantly reduced," his sleep was "significantly improved"; overall he felt improved, but his symptoms still persisted; his mood and affect were stable and at times bright; he was calm, cooperative, and conversational); Tr. 343 (April 15, 2016: Plaintiff reported improved mood, but decreased quality of sleep); Tr. 426 (April 29, 2016: Plaintiff was started on Abilify for depression, mood-

ORDER - 14

associated symptoms, psychosis, and sleep); Tr. 431 (June 7, 2016: Plaintiff reported that overall, his depression, mood, and anxiety had become more manageable with his current medication regimen; his relationship with his girlfriend was "good and stable"); Tr. 648-50 (January 6, 2018: on mental status examination, Plaintiff was cooperative and engaged throughout the evaluation, he denied any hallucinations or delusions, his speech was within normal limits, his thought process was goal-directed; the examining provider opined that Plaintiff's ability to interact with coworkers and the public was likely moderately impaired, and his ability to deal with the usual stress encountered in the workplace was markedly impaired if it involved persistent activity, complex tasks, tasks pressure, or interacting with other individuals).

Plaintiff argues that Dr. Cline's opinion "is entirely consistent with the substantial evidence in the record, mirroring the medical source statement of Dr. Metoyer." ECF No. 15 at 11. Plaintiff cites to Dr. Cline's assessed marked limitations in the ability to communicate, perform effectively, and maintain appropriate behavior in a work setting, and argues that this opinion was "essentially the [sic] similar" to Dr. Metoyer's assessed marked limitation in the ability to deal with the usual stress encountered in the workplace if it involved persistent activity, complex tasks, task pressure, or interacting with other

individuals. ECF No. 15 at 11 (citing Tr. 315, 650).[4]  Plaintiff also asserts that Dr.

Cline's opinion was endorsed by Aaron Burge, Ph.D.  ECF No. 15 at 11 (citing Tr.

317-19).  The evidence cited by Plaintiff does not undermine the ALJ's conclusion.

Dr. Metoyer opined that Plaintiff would only experience marked limitations in his

ability to deal with the usual workplace stress *if* the work involved persistent

activity, complex tasks, task pressure, or interacting with others.  Tr. 650.  Unlike

Dr. Metoyer in his written assessment, Dr. Cline did not include any qualifying

statements with her assessed marked limitations.  Tr. 315.  The ALJ formulated an

RFC that incorporated Dr. Metoyer's opinion from his written assessment, and

limited Plaintiff to simple and routine tasks, no work with the general public,

occasional brief contact with coworkers, and the ability to adjust to expected and

occasional changes in the workplace.  Tr. 21.  The overall record is consistent with

the ALJ's finding that Plaintiff was started on medication after Dr. Cline's

assessment, and Plaintiff was able to interact with others in a limited capacity.  Tr.

24-25; *see, e.g.,* Tr. 430-32 (June 3, 2016 and June 7, 2016: Plaintiff reported

_____

[4] Plaintiff asserts that Dr. Cline's opinion mirrors the "medical source statement of

Dr. Metoyer," Tr. 651-53, to which the ALJ gave limited weight, but Plaintiff

quotes from and cites to Dr. Metoyer's written assessment, Tr. 346-50, to which

the ALJ gave great weight.  ECF No. 15 at 11 (citing Tr. 350); Tr. 25.

ongoing depression and anxiety but he stated his mood was improved over the past week; he was started on Zyprexa and his other mediation dosages were adjusted); Tr. 80-93, 95-108, 110-23, 125-38 (June 3, 2016 and October 25, 2016: two State agency psychological consultants opined Plaintiff could interact appropriately for brief periods but he was not well suited to work with the public and coworkers); Tr. 536-41 (March 30, 2017: Plaintiff reported he felt the changes to his medication would he beneficial; he had stable housing and a new girlfriend which was going well but he was involved in another altercation at his residence; an examination showed his mood was apathetic with a sullen and constricted affect; his memory, thought content, insight and judgment were intact); Tr. 38 (November 16, 2017: Plaintiff testified he had been living with friends since December 2016). This was a specific and legitimate reason, supported by substantial evidence, to discount Dr. Cline's opinion.

### 2. Dr. Metoyer

On January 6, 2018, consultative examiner Patrick Metoyer, Ph.D., performed a psychological evaluation of Plaintiff. Tr. 646-53. Dr. Metoyer issued a written assessment, Tr. 646–650, and completed a mental medical source statement, Tr. 651-53. In the written assessment, Dr. Metoyer opined that Plaintiff had the ability to reason and understand, he had some adaptation skills, and his sustained concentration and persistence were adequate. Tr. 649. He determined

that Plaintiff's remote memory was intact, but his recent and immediate memory were mildly impaired. Tr. 649. Dr. Metoyer also noted that Plaintiff's ability to interact with coworkers and the public was moderately impaired. Tr. 649-50. He opined that Plaintiff's ability to deal with the usual stress encountered in the workplace was markedly impaired if it involved persistent activity, complex tasks, task pressure, and interacting with others. Tr. 650. On the medical source statement, dated the same day as the written assessment, Dr. Metoyer opined that Plaintiff had marked limitations in responding appropriately to usual work situations and changes in a routine work setting, as well as interacting appropriately with the public, coworkers, and supervisors. Tr. 652. He also opined that Plaintiff had moderate limitations in performing complex tasks, but he had only mild limitations in performing simple tasks. Tr. 651.

The ALJ gave Dr. Metoyer's written assessment great weight, but he gave limited weight to Dr. Metoyer's medical source statement. Tr. 25. Because Dr. Metoyer's opinion in the medical source statement was contradicted by the nonexamining opinions of Dr. Eather, Tr. 80-93, 95-108, and Dr. van Dam, Tr. 110-23, 125-38, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Metoyer's medical source statement opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ gave limited weight to Dr. Metoyer's medical source statement, finding that his marked limitations were inconsistent with his own examination and written assessment which showed only moderate limitations. Tr. 25. An ALJ may reject opinions that are internally inconsistent. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ is not obligated to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Plaintiff does not challenge the ALJ's evaluation of Dr. Metoyer's written assessment, but instead asserts that the ALJ failed to articulate specific facts within Dr. Metoyer's written assessment that conflicted with Dr. Metoyer's opined marked limitations set forth in the medical source statement. ECF No. 15 at 11-12. However, contrary to Plaintiff's assertion, the ALJ noted that Dr. Metoyer assessed only mild to moderate functional limitations in his written assessment, except for one marked limitation in the ability to deal with the usual workplace stress, which he qualified by stating Plaintiff's ability was only markedly impaired if his work involved persistent activity, complex tasks, task pressure, and interacting with others. Tr. 25 (citing Tr. 649-50). In his written assessment, Dr. Metoyer noted that Plaintiff's ability to interact with coworkers and the public was moderately impaired. Tr. 649-50. However, in his medical source statement, dated the same day, he opined that Plaintiff had marked

ORDER - 19

limitations in interacting appropriately with the public, coworkers, and supervisors. Tr. 652. Further, the ALJ specified that Dr. Metoyer's written assessment was given great weight because his mild to moderate findings were consistent with his own examination results that showed Plaintiff was cooperative, he could recall the past three presidents, recall three objects immediately, recite five digits forward, spell the word "world" forward and in reverse, complete a three-step command without difficulty, perform serial sevens, and follow a conversation without difficulty. Tr. 25. Finding that Dr. Metoyer's marked limitations on his medical source statement were inconsistent with the results from his own examination and his written assessment was a specific and legitimate reason to give limited weight to Dr. Metoyer's medical source statement.

## B. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 15 at 7-9. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 22.

### 1. Not Supported by Medical Evidence

The ALJ found that Plaintiff's symptom complaints were not supported by the medical evidence. Tr. 22-24, 26. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by the objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other

symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In his opening brief, Plaintiff did not challenge this reason articulated by the ALJ for discounting his symptom complaints, thus any challenge is waived. *Kim*, 154 F.3d at 1000 (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).[5]

_____

[5] Plaintiff asserts "[t]he ALJ stated that [Plaintiff's] ability to do personal care, prepare his own meals, shop for groceries, and go for walks, was inconsistent with his allegations," and argues "[t]hese activities are in no way inconsistent with [Plaintiff's] complaints." ECF No. 15 at 8 (citing Tr. 26). Defendant disagrees with Plaintiff's contention that the ALJ rejected Plaintiff's testimony "principally because" it was inconsistent with his activities and unsupported by objective findings. ECF No. 15 at 8. Although the ALJ cited to Plaintiff's reported ability to shop for food, prepare meals, do laundry, tend to his personal care, and walk around during the day asking for job applications, Tr. 23, like Defendant, the Court reads the ALJ's decision as rejecting Plaintiff's symptom claims because they were inconsistent with the medical evidence and treatment notes showed medication was effective in controlling his symptoms, not because they were inconsistent with his activities.

Despite Plaintiff's waiver, the Court has reviewed the ALJ's finding. The ALJ discussed Plaintiff's alleged impairments that caused him to be unable to work, such a seizure disorder, hypothyroidism, mood disorder, bipolar disorder, depression, personality disorder, and anxiety. Tr. 21. The ALJ cited Plaintiff's reports that his impairments affected his ability to climb stairs, complete tasks, concentrate, follow instructions, and get along with others. Tr. 21 (citing Tr. 263). The ALJ referenced Plaintiff's statements that he had a seizure about every four months. Tr. 21, 66, 268-70. The ALJ also cited Plaintiff's testimony that he was unable to work due to deficits in his mood including irritability, anger, and auditory and visual hallucinations that affected his ability to interact with others. Tr. 21, 54-55, 59-63.

The ALJ found that Plaintiff's testimony about the frequency of his seizures was not consistent with treatment notes in the record. Tr. 22; *see, e.g.,* Tr. 382 (January 5, 2015: Plaintiff reported feeling well and had no seizures for the past six months); Tr. 359-60 (June 1, 2015: during a routine examination, Plaintiff reported he had self-reduced his medication from two tablets to one tablet; however, he was seizure free when he took his medication as prescribed); Tr. 390-91 (June 14, 2016: Plaintiff stated his last seizure was 18 months prior but he was experiencing

ORDER - 24

increased auditory and visual changes and migraines two to three days a week; an examination showed he was in no acute distress and his gait was normal, he was alert and his affect was appropriate for his mood); Tr. 392-93 (October 5, 2016: during a follow-up examination, Plaintiff reported a seizure three months earlier with loss of consciousness; he also reported a seizure two days earlier, which he described as a sudden sensation of weakness with brief loss of consciousness lasting several seconds; an examination was unremarkable); Tr. 644 (January 12, 2017: during a neurological evaluation, Plaintiff denied any recurrent seizures with loss of consciousness for over six months, but he reported severe headaches two to three days a week; an examination showed he was in no acute distress and he was alert, his affect was appropriate to his mood, and his memory was intact); Tr. 642 (June 30, 2017: during a follow-up neurological evaluation, Plaintiff stated he was seizure free for over a year and he had not experienced a headache in the last six months).

The ALJ also found that Plaintiff's mental health symptom claims were not supported by the overall record which showed that although Plaintiff had mental health symptoms, his concentration, memory, and cognitive abilities had been maintained.  Tr. 24; *see, e.g.,* Tr. 340, 350, 353, 355, 419, 423-24, 427, 432, 541, 644 (despite the deficits in his mood, mental status examinations showed Plaintiff's memory was generally intact); Tr. 470, 472 (January 24, 2013: Plaintiff

stated overall he was feeling better as far as his depression, and his depression was reported to be improved); Tr. 481 (September 9, 2014: Plaintiff's depression was reported to be persistent and stable); Tr. 358-60 (June 1, 2015: Plaintiff reported he was feeling okay because he had just started a new job and he wanted to restart his medication to maintain stability; an examination was unremarkable); Tr. 350 (October 1, 2015: Plaintiff reported feeling better overall and he felt like he was getting back on track as he did in the past; an examination showed he was mildly anxious but it was much improved from his last visit); Tr. 342-45 (March-April 2016: Plaintiff complained of depression, anxiety, and anger; he reported a history of physical altercations and decreased emotional regulation; an examination showed his mood and affect were irritable, labile, and angry; his insight and judgment were impaired but his memory was intact and his intelligence was average); Tr. 312-16 (March 3, 2016: during a psychiatric evaluation, Plaintiff reported repeated episodes of blacking out due to rage on at least five occasions; he also reported periods of depression lasting two weeks that made it difficult to concentrate; a mental status examination showed his affect was slightly flat, his speech was slightly loud, and he was guarded, but he was otherwise cooperative, his thought content and process were impaired but his fund of knowledge was intact, his memory and concentration were normal); Tr. 338 (May 13, 2016: Plaintiff stated his current medication regimen was very effective and he was better

able to cope with his symptoms; he reported his visual and auditory hallucinations, delusional thinking, and paranoia were significantly reduced; his mood and affect were stable and he was calm and cooperative); Tr. 80-93, 95-108, 110-23, 125-38 (June 3, 2016 and October 25, 2016: two State agency psychological consultants opined Plaintiff could interact appropriately for brief periods but he was not well suited to work with the public and coworkers); Tr. 430-32 (June 7, 2016: Plaintiff reported ongoing depression and anxiety but stated his mood was improved over the past week; upon mental status examination his mood was labile with a pleasant and happy affect, his thought process and memory were intact but his insight and judgment were impaired); Tr. 418 (July 15, 2016: Plaintiff reported suboptimal improvement in his depression but his mood was stable overall); Tr. 415-17, 560-69 (August-November 2016: Plaintiff reported mood instability and decreased motivation for activities; he reported hallucinations, paranoia, and delusional thinking; upon mental status examination his mood was labile with a sullen, sad, anxious, and angry affect but he was calm, cooperative, and conversational; his memory, thought process, and motor activity were intact but his insight and judgment were impaired; a depression screen was positive for severe depression); Tr. 539-59 (December 2016-February 2017: Plaintiff reported stressors associated with insufficient housing and being left out of family plans over Thanksgiving; he reported being in an altercation with his roommate; upon mental status

examination his mood was labile with a sullen and sad affect; his memory, thought process, and motor activity were intact but his insight and judgment were impaired); Tr. 536-41 (March 30, 2017: Plaintiff reported he felt the changes to his medication would he beneficial; he had stable housing and a new girlfriend which was going well but he was involved in another altercation at his residence; an examination showed his mood was apathetic with a sullen and constricted affect; his memory, thought content, insight and judgment were intact); Tr. 527-33 (April-May 2017: Plaintiff reported ongoing problems with anxiety and paranoia but stated his girlfriend was helping; his overall presentation seemed to be increasingly stabilized and there was less disorganized thinking; an examination showed his mood was subdued with an anxious and constricted affect but his memory, thought process, judgment and insight were intact); Tr. 518 (June 26, 2017: Plaintiff reported his anxiety was more manageable but he was having issues with sleep; an examination showed his mood was subdued with a sullen affect but his memory, thought process, judgment and insight were intact); Tr. 508 (August 16, 2017: Plaintiff stated he was feeling significantly better with his current medication but for some unknown reason his symptoms were exacerbated and he was experiencing increased irritability and agitation; an examination showed his mood was euthymic and he had a pleasant affect, and his memory, thought process, judgment and insight were intact); Tr. 502 (September 14, 2017: Plaintiff stated he

realized that even though his medication was helpful he also needed to make behavioral changes; an examination showed his mood was apathetic with a congruent affect but his thought process, judgment and insight were intact); Tr. 38 (November 16, 2017: Plaintiff testified he had been living with friends since December 2016); Tr. 648-50 (January 6, 2018: during a consultative examination, Plaintiff's remote memory was intact and there were no more than mild deficits in his recent and immediate memory; he could follow a three-step command without difficulty, perform serial sevens, spell the word "world" forward/backward and follow conversation without difficulty).

The ALJ reasonably concluded, based on this record, that Plaintiff's treatment notes did not support the level of physical or mental impairment alleged by Plaintiff. Tr. 26. The ALJ noted that Plaintiff's most significant difficulty was with social interactions, and therefore, the ALJ found that Plaintiff should not work with the general public and should have reduced contact with coworkers. Tr. 24. The ALJ's finding is supported by substantial evidence and was a clear and convincing reason, in conjunction with Plaintiff's positive response to medication, *see infra*, to discount Plaintiff's symptom complaints.

### 2. *Positive Response to Medication*

The ALJ found that Plaintiff's symptom testimony was inconsistent with the positive response he showed with the use of medications. Tr. 24. The

effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). In his opening brief, Plaintiff did not challenge this reason articulated by the ALJ for discounting his symptom complaints, thus any challenge is waived. *Kim*, 154 F.3d at 1000 (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

Despite Plaintiff's waiver, the Court has reviewed the ALJ's finding. The ALJ observed that treatment records showed Plaintiff's seizure disorder symptoms responded well to medication. Tr. 26; *see, e.g.,* Tr. 492 (November 15, 2014: Plaintiff reported no loss of consciousness for two months and he had been on Trileptal for approximately two months, which was started after an episode of loss of consciousness); Tr. 382-83, 494 (January 5, 2015: Plaintiff report he had not had recurrent episode of loss of awareness for the last several months; he was taking Trileptal 1200 mg nightly; Plaintiff's brain MRI and encephalogram were both normal; he felt well and his neurologist stated that he was able to drive and return

to full work activity); Tr. 359-60 (June 1, 2015: Plaintiff stated he self-reduced his medication from two tablets to one tablet; however, he was seizure free when he took his medication as prescribed); Tr. 390 (June 14, 2016: Plaintiff reported being seizure free for over one year); Tr. 426-28 (June 16, 2016: Plaintiff complained of increased seizure activity; however, it was noted he was taking the entire dosage of Depakote in the morning instead of twice daily as prescribed; a treatment note reported that Plaintiff's neurologist had "evaluated and made a recommendation to change medication, he has not started the new medication yet."); Tr. 268 (June 20, 2016: Plaintiff reported no seizures in the last six months since he had been on medication); Tr. 423, 579 (June 29, 2016: Plaintiff reported feeling good that he had not had a seizure; reported that his last seizure was one and a half weeks prior; he had been taking his entire dosage of Depakote in the morning, rather than twice a day as prescribed); Tr. 392-93 (October 5, 2016: Plaintiff reported a seizure approximately three months prior and one two days prior; he was prohibited from driving for six months); Tr. 644 (January 12, 2017: at a neurological evaluation, Plaintiff denied any recurrent seizures with loss of consciousness for over six months, but he reported severe headaches two to three days a week; an examination showed he was in no acute distress and he was alert, his affect was appropriate to his mood and his memory was intact, he was continued on Depakote and he was started on Amitriptyline and Maxalt); Tr. 518 (June 26, 2017: Plaintiff

repeatedly denied any seizures, but contradicted himself with a treatment note from April 17, 2017, Tr. 530, where he reported two mild seizures within the last few months); Tr. 642 (June 30, 2017: during a follow-up neurological evaluation, Plaintiff stated he was seizure free for over a year and he had not experienced a headache in the last six months; he was doing well on Depakote ER 1000 mg daily).

The ALJ also observed that treatment records showed Plaintiff's mental health symptoms responded well to medication. Tr. 24; *see, e.g.,* Tr. 468 (November 6, 2012: Plaintiff thought Prozac was helping); Tr. 358-60 (June 1, 2015: Plaintiff was feeling okay and back on track, but wanted to restart medications to maintain stability; an examination was unremarkable but a depression screen was positive for moderate depression; he was started on Celexa and Vistaril); Tr. 351-53 (September 24, 2015: Plaintiff reported a diagnosis history of bipolar disorder and a history of prescribed medications for depression with positive results; he was continued on his current medication and was started on Trazodone); Tr. 350 (October 1, 2015: Plaintiff reported feeling better overall and he felt like he was getting back on track as he did in the past; an examination showed he was mildly anxious but it was much improved from his last visit); Tr. 330 (January 28, 2016: a mental health intake assessment described Plaintiff's current overall medication efficacy as highly effective; Plaintiff reported his

medications were "working really well except my sleep medication."); Tr. 341-45

(March-April 2016: Plaintiff complained of depression, anxiety, and anger; he

reported a history of physical altercations and decreased emotional regulation; an

examination showed his mood and affect were irritable, labile, and angry; his

insight and judgment were impaired but his memory was intact and his intelligence

was average; Plaintiff was started on Seroquel); Tr. 338 (May 13, 2016: Plaintiff

stated his current medication regimen was very effective and he was better able to

cope with his symptoms; he stated his visual and auditory hallucinations,

delusional thinking, and paranoia were significantly reduced; his  mood and affect

were stable and he was calm and cooperative; he was started on Risperidone); Tr.

584 (June 7, 2016: Plaintiff reported his overall depression, mood, and anxiety had

become more manageable with his current medication regimen); Tr. 430-32 (June

3, 2016 and June 7, 2016: Plaintiff reported ongoing depression and anxiety but he

stated his mood was improved over the past week; he was started on Zyprexa and

his other mediation dosages were adjusted); Tr. 575 (July 6, 2016: a treatment note

stated Plaintiff "seems to feel Abilify has been helpful with his psychosis and

depression."); Tr. 536-41 (February and March 2017: Plaintiff stated he felt the

changes to his medication would he beneficial; his Abilify dosage was increased);

Tr.527-33 (April and May 2017: Plaintiff's overall presentation seemed to be

increasingly stabilized and there was less disorganized thinking; an examination

showed his mood was subdued with an anxious and constricted affect but his memory, thought process, judgment and insight were intact); Tr. 518 (June 26, 2017: Plaintiff stated his anxiety was more manageable but he was having issues with sleep; an examination showed his mood was subdued with a sullen affect but his memory, thought process, judgment and insight were intact; he was started on Propranolol); Tr. 508 (August 16, 2017: Plaintiff stated he was feeling significantly better with his current medication but for some unknown reason his symptoms were exacerbated and he was experiencing increased irritability and agitation; an examination showed his mood was euthymic and he had a pleasant affect; his memory, thought process, judgment and insight were intact); Tr. 502 (September 14, 2017: Plaintiff stated he now realized that even though his medication was helpful he also needed to make behavioral changes; an examination showed his mood was apathetic with a congruent affect but his memory, thought process, judgment and insight were intact).

Based on this record, the ALJ reasonably concluded that the positive response to medication that Plaintiff reported with his physical and mental symptoms supported a finding that Plaintiff was capable of a full range of work at all exertional levels with some nonexertional limitations, which was inconsistent with Plaintiff's subjective symptom claims of total disability. Tr. 24, 26. The ALJ's finding is supported by substantial evidence.

## C.    Step Five

Plaintiff argues that the ALJ erred at step five.  ECF No. 15 at 12-16.  At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran*, 700 F.3d at 389.  Plaintiff contends the ALJ's step five finding was based on an incomplete hypothetical posed to the vocational expert.  ECF No. 15 at 13.  However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinions of Dr. Cline and Dr. Metoyer, as well as Plaintiff's symptom claims.[6]  *Id.* at 12-16.

---

[6] In a different section of his opening brief, Plaintiff mentions an October 2016 treatment note from his neurologist, Shannon Grosdidier, M.D., prohibiting Plaintiff from driving due to his seizures.  ECF No. 15 at 10; Tr. 393, 563.  Plaintiff argues this note constitutes clear evidence that his seizure activity was unpredictable and of sufficient severity that he should not drive.  ECF No. 15 at 10.  Plaintiff asserts "[t]his clearly imposes functional imitations…which were not incorporated in the hypotheticals to the vocational expert by the ALJ." *Id.*  However, Plaintiff does not elaborate on this assertion.  Further, treatment notes, in general, do not constitute medical opinions.  *See* 20 C.F.R. §§ 404.1527(a)(2),

ORDER - 35

For reasons discussed throughout this decision, the ALJ's findings regarding the medical opinion evidence and Plaintiff's symptom claims are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in finding Plaintiff capable of performing other work in the national economy based on the hypothetical containing Plaintiff's RFC. Plaintiff is not entitled to remand on these grounds.

---

416.927(a)(2) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Moreover, the DOT descriptions do not list driving as a requirement for the three jobs identified by the vocational expert. Tr. 70; DOT 323.687-010, *Hospital Cleaner*, 1991 WL 672782; DOT 920.587-018, *Hand Packager*, 1991 WL 687916; DOT 361.687-018, *Laundry Laborer*, 1991 WL 672992.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED February 19, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE